IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN HARRISON, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-3425 |
| v. | ) ) ) | Judge Amy St. Eve<br>Mag. Judge Gilbert |
| VILLAGE OF PALOS HILLS, | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Lauren Harrison ("Plaintiff"), on behalf of herself and all others similarly situated, requests that the Court enter an order finally approving the Settlement Agreement (the "Settlement" or the "Agreement") between Plaintiff and defendant Village of Palos Hills ("Defendant"). The parties' proposed Order is attached hereto as Exhibit A for the Court to review. Plaintiff will also submit an electronic copy of Exhibit A to the Court via e-mail in accordance with the Court's proposed order procedure.

**I.      Preliminary approval and dissemination of Class Notice.**

On August 2, 2012, after consideration of the parties' Settlement Agreement and proposed class notice plan, the Court entered an order preliminarily approving the settlement and approving the class notice plan. Doc. 102. At the request of the parties, the Court then entered an *Amended Order Preliminarily Approving Settlement and Certifying Settlement Class* to allow additional time for Defendant to gather the addresses for the Class Members. Doc. 106. In accordance with that Order, Class Notice was sent via United States Mail to each Class Member identified by Defendant during discovery. *See* Declaration of Charles Klein, Exhibit B. No

members of the settlement class requested exclusion, nor objected to the settlement. *See* Declaration of James M. Smith, Exhibit C.

## II. Background and summary of the Settlement.

### A. The litigation.

On June 4, 2010, Plaintiff, on behalf of herself and a class of similarly situated persons, filed Case No. 1:10-cv-3425 in this Court asserting claims against Defendant City of Palos Hills and former defendant Paul J. Madigan under 42 U.S.C. § 1983 and Invasion of Privacy. On July 31, 2012, this Court granted Plaintiff's Motion to Voluntarily Dismiss Paul J. Madigan as a defendant in this action. Doc. 100. Plaintiff alleged that Defendant pursued a policy of video monitoring and recording all areas inside the cells at the Palos Hills police station, without the knowledge or consent of the detainees and arrestees. Plaintiff alleged that these recordings were taken in violation of their constitutional rights, and represents a substantial invasion of privacy. Defendant denied their policy violated any laws.

### B. Summary of the Settlement.

Counsel for Plaintiff and Defendant engaged in extensive negotiations concerning the possible settlement of all claims. These negotiations included telephonic and in-person negotiation sessions as well as formal conferences before Magistrate Judge Gilbert. The Settlement was negotiated at arms' length by lawyers experienced in complex and class litigation, as well as Section 1983 litigation. The Settlement is fair, adequate, and reasonable, addresses Plaintiff's litigation objectives and falls within the range of possible outcomes suitable for final approval.

#### 1. The Settlement Class.

Pursuant to the Preliminary Approval Order, the settlement class is comprised of "all persons who, between June 4, 2008 and July 30, 2012, were subjected to Defendant's policy of

video monitoring and recording all areas of the lockup, including the toilet area inside the cells at the Palos Hills police station." Excluded from the class are: (a) all judges or arbitrators who have presided over this case and their spouses; (b) all persons who validly and timely request exclusion from the Class; and (c) all persons who have previously executed and delivered to Palos Hills a release of their claims. Doc. 106 at ¶ 2.

### 2. Relief available to the Settlement Class.

Defendant agreed to change their policy regarding the video monitoring and recording of all persons taken into custody to incorporate a pixilated camera view of the area of the cells that includes the toilet and make available twenty thousand dollars ($20,000) for class member relief. (Settlement Agreement "Doc. 98-1" at ¶ 2.4). The injunctive and monetary relief will be distributed as follows:

- Defendant shall replace the existing cameras in the Palos Hills lockup with cameras capable of obscuring the view of the area that includes the toilet in each of the cells in the lockup in which a toilet is installed and operate the new cameras, with the "pixilating" feature engaged at all times going forward whenever the cameras are in operation.

- Settlement Class claimants will receive a *pro rata* share of a fund in the amount of $20,000 not to exceed $300 per claimant.

### a. Class Notice and settlement administration.

The parties agreed to provide Notice to the Settlement Class along with a claim form by first-class mail. (Doc. 98-1 at ¶ 2.4.2.1). Moreover, the Settlement provided that Class Counsel shall administer the settlement and bear the cost and expense in connection with providing the Class Notice and claim form to the Class. (*Id.* at ¶ 2.4.2.2). Class Counsel caused the Class Notice and claim form to be sent by first-class mail. Exhibit B.

### b. Claims.

Moreover, Class Counsel agreed to perform the functions of a typical settlement administrator, including, receiving and processing the claim forms, and sending checks to the claimants. (Doc. 98-1 at ¶ 1.10). Class Counsel mailed the claim forms to the Settlement Class. Exhibit B. The Claims Submission Deadline is October 26, 2012. Exhibit B, Ex. A.

### c. Opt-Out, objection and release provisions.

Class Members had the opportunity to either exclude themselves or object to the Settlement by September 28, 2012. (Doc. 98-1 at ¶ 3.9; and Exhibit B, Ex. A). No members of the Settlement Class opted out, and no members of the Settlement Class objected to the Settlement. Exhibit C. As a result, all Settlement Class Members will be bound by the final approval order, the judgment, and the releases set forth in the Agreement. (Doc. 98-1 at ¶ 3.18).

### d. Incentive award, and attorneys' fees and expenses.

At the Final Fairness Hearing, Class Counsel will ask the Court to approve an award of $5,000.00 to Lauren Harrison for serving as the class representative. (Doc. 98-1 at ¶ 2.4.3). Defendant agreed not to oppose this request. (*Id.*). Class Counsel will also ask the Court for payment of $80,000 in attorneys' fees and litigation costs as a "prevailing party." (Doc. 98-1 at ¶ 2.4.4). These attorneys' fees and costs represent approximately thirty percent (30%) of Class Counsel's lodestar and costs associated with this litigation. Defendant will not oppose this request. (*Id.*).

## III. The Court should approve the Settlement.

### A. Standard for judicial evaluation and approval.

A court should approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Tech. + Telecom.*, 309 F.3d 978, 986 (7th Cir. 2002);

*E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation.").

  **B.**  **Factors to be considered in determining whether a settlement is fair, reasonable, and adequate.**

  The factors considered are: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length, and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby*, 75 F. 3d at 1198-99; *GE Capital Corp. v. Lease Resolution Corp.*, 128 F. 3d 1074, 1082 (7th Cir. 1997); *Armstrong v. Bd. of Schl Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980) (for factor (8)). Here, these factors show that the Settlement should be approved.

    **1.**  **Strength on the merits compared to the Settlement amount.**

  Generally, the most important factor in determining whether a settlement should be approved is the comparison of the terms of the settlement with the likely results of the litigation. *Hiram Walker*, 768 F.2d at 889; *see also Synfuel*, 463 F.3d at 653.

  Plaintiff alleged that Defendant violated 42 U.S.C. § 1983 and Invasion of Privacy under state law for Defendant's policy of video monitoring and recording all areas inside the cells at the Palos Hills police station, without the knowledge or consent of the detainees and arrestees. To the parties' knowledge these claims, under these facts, have never been litigated. Defendant denied and continues to deny its policy violated any law. If the parties did not reach a settlement, they were ready to brief the issue of Rule 23 class certification. The resolution of class

5

certification was an uncertainty as Defendant maintained that class certification was not appropriate. Moreover, if Plaintiff was to prevail on class certification, ultimately prevailing on the merits of these claims was also uncertain as Defendant maintained (and still maintains) that its video recording practice did not violate any laws. Furthermore, the amount of damages that Plaintiff and the class could be awarded if a judgment was entered in their favor was uncertain.

Despite these uncertainties, the parties negotiated a settlement that provides great relief to Plaintiff and the Settlement Class. Each claimant may receive up to $300. (Doc. 98-1, ¶ 2.4) Moreover, Defendant agreed to change its practices. *Id*. Defendant agreed to replace the existing cameras in the Palos Hills lockup with cameras capable of obscuring the view of the area that includes the toilet in each of the cells in the lockup in which a toilet is installed and operate the new cameras with the "pixilating" feature engaged at all times whenever the cameras are in operation. *Id*.

As a result, the Settlement provides a meaningful payment to every Class Member who submits a claim form as well as an important change to Defendant's policies and procedures to protect the rights of future detainees and arrestees. When weighed against the merits, the Settlement more than adequately compensates Plaintiff and the Settlement Class.

### 2. Defendant's ability to pay.

In the context of a class-wide settlement, courts typically consider the defendant's ability to pay. *See Hispanics United of DuPage County v. Addison, Illinois*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997) (Castillo, J.). Ability to pay is not a factor here, and Defendant does not contend otherwise.

### 3. The likely costs, complexity, and length of further litigation.

Class actions have a well-deserved reputation for complexity. *In re Domestic Air Transp.*

6

*Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). This case is no exception.

When the parties finalized settlement discussions, briefing on class certification was to begin. Litigation of class certification issues would require a significant commitment of time and resources from both parties. After the Court ruled on class certification, additional merits related discovery would be likely, and then significant commitment of time and resources to briefing motions for summary judgment. After the Court would rule on the substantive motions for summary judgment, a lengthy and expensive trial would be a possibility, followed by an appeal. The Settlement avoids the uncertainty, time, and costs associated with continuing this litigation. The Court should finally approve the Settlement because it will minimize the inevitable costs of future litigation of this matter.

### 4. Opposition.

A low rate of opt outs or opposition reflects favorably on a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020-21 (N.D. Ill. 2001) (high acceptance rate "is strong circumstantial evidence in favor of the settlements"). No objections or opt outs were filed in opposition to this Settlement. Exhibit C. The lack of opposition and requests for exclusion show that the overwhelming majority of the Class Members support the Settlement.

### 5. Absence of collusion.

"Settlement negotiations that are conducted at arm's length and in good faith demonstrate that a settlement is not the product of collusion." *Retsky Family Ltd. Partnership v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, * 2 (N.D. Ill. Dec. 10, 2001) (Darrah, J.). The Settlement record proves that the Settlement is not the product of collusion. Plaintiff and Defendant reached this Agreement only after considering: (1) the benefits to the Settlement

Class; (2) the unfeasibility of individual judgments; (3) the evidence of liability in the case; and (4) the risks, costs, uncertainties, and delays of litigation.

The Settlement is the culmination of extensive negotiation. Settlement discussions began early in the case through telephone conferences, written correspondence, and multiple in-person meetings. The Settlement terms were ultimately agreed upon after arduous formal mediations between experienced counsel and overseen by Magistrate Judge Gilbert. Subsequently, the parties exchanged drafts of the Settlement before they agreed upon the now-preliminarily approved terms of the Settlement.

### 6. Opinion of counsel.

Class Counsel believe this Settlement is fair, reasonable, and adequate. Class Counsel have combined to litigate numerous class actions as well as numerous Section 1983 cases. Under these circumstances, Class Counsel's opinion should be given great weight because of their extensive and relevant experience. The Court relied on Class Counsel's resumes in appointing the undersigned as Class Counsel at the preliminary approval stage. (Doc. 98-2).

### 7. Stage of proceedings and amount of discovery.

The stage of proceedings and amount of discovery supports final approval. The members of the class have been identified. Exhibit B. The parties have compiled necessary discovery and exchanged documents and data sufficient for Plaintiff's attorneys to evaluate the strength of this case.

The law favors early settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. *See Isby*, 75 F.3d at 1196 ("Federal courts naturally favor the settlement of class action litigation."); *Airline Stewards, Etc. v. Am. Airlines*, 573 F.2d 960, 963 (7th Cir. 1978) ("settlements are entered into because of 'the very uncertainties of outcome in litigation, as well

as the avoidance of wasteful litigation and expense'").

### 8. Public interest.

The public interest is best served by ending this case now. Courts have held that a settlement of class action litigation serves the public interest. *Armstrong*, 616 F.2d at 313.

## IV. The Notice satisfied due process requirements.

In accord with the Preliminary Approval Order (Doc. 106), the parties caused the Class Notice and claim form to be mailed to the Settlement Class. Exhibit B.

In order to protect the rights of absent Class Members and ensure compliance with Rule 23 (e) (1), the Court must provide the best notice practicable to Class Members. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985). Notice by first-class mail is practical when the names and addresses of most of the Class Members are known. *See Manual for Complex Litigation* at § 30.2111; *Mangone v. First USA Bank*, 206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a settlement class with nearly 18.5 million members). Here, the Class Members were ascertainable and notice was sent to them by first-class mail. Exhibit B. For every mailing that was returned as undeliverable, that address was run through the National Change of Address Database and the Class Notice and claim form was then re-sent to that class member with the address from the NCOA database. Exhibit B.

Additionally, the content of the notice complied with Fed. R. Civ. P. 23 (c) (2) (B), which requires that notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the class notice stated those things. Exhibit B, Ex. A.

9

## V. The agreed upon attorneys' fees are reasonable.

Defendant agreed that Plaintiff is a "prevailing party" and that Plaintiff and the Class may recover, subject to the Court's approval, $80,000.00 in reasonable attorneys' fees. (Doc. 98-1, ¶ 2.4.4). Plaintiff and the Settlement Class ask the Court to approve the agreed upon attorneys' fees as $80,000 represents only a fraction of Class Counsel's lodestar.

"The prevailing party in a Section 1983 action may recover reasonable attorney's fees." *LaSalvia v. City of Evanston*, No. C 3076, 2012 WL 2502703 at *1 (N.D.Ill., June 28, 2012)(St. Eve., J.) *citing* 42 U.S.C. § 1988. "To determine a reasonable fee, the Seventh Circuit instructs district courts to use the lodestar method, namely to multiply the 'number of hours reasonably expended on the litigation by a reasonable hourly rate.'" *Id. quoting Pickett v. Sheridan Health Care Cent.*, 664 F.3d 632, 639 (7th Cir. 2011). "After arriving at the lodestar figure, 'other considerations may lead the district court to adjust the fee upward or downward, including the important factor of the results obtained.'" *Id. quoting Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Here, Class Counsel's combined lodestar and litigation costs exceed $267,000. Based upon the great success of this litigation, Plaintiff contends that Plaintiff would be entitled to its full lodestar, or more. The parties, however, request the Court to award only $80,000.00 for attorneys' fees and litigation costs, which is approximately 30% of Class Counsel's lodestar. Class Counsel has not attached a detailed printout of the time and costs expended in this litigation, but certainly can do so if that is the Court's desire. Moreover, Class Counsel agreed to act as the Settlement Administrator. As a result, Class Counsel's lodestar and litigation expenses will not stop if the Court grants Final Approval. Instead, Class Counsel will continue to work to ensure Defendant has modified its practices as it agreed, receive and review claim forms from all claimants, assess the viability of those claims, work with Defendant to determine the validity of

the final claimants, mail checks to the claimants, and field any questions/concerns that claimants or Class Members may have going forward.

Moreover, when reviewing an agreement regarding attorneys' fees and costs, courts should be cognizant of the "opportunities for collusive arrangements in which defendants can pay the attorneys for the plaintiff class enough money to induce them to settle the class action for too little benefit to the class." *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1397 (9th Cir. 1999). Courts should consider whether: (1) attorneys' fees and expenses diminish class relief, and (2) when the parties negotiated or discussed attorneys' fees. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-323 (W.D. Tex. 2007). The instant Settlement satisfies both prongs of this test as the attorneys' fees have no bearing on the class relief and the parties negotiated the attorneys' fees after the parties negotiated the injunctive and monetary relief for the Class Members.

**VI.     The incentive award to Plaintiff is appropriate.**

Additionally, the Court should approve Defendant's agreement to pay five thousand dollars ($5,000) to Plaintiff Lauren Harrison. This payment is in recognition of Plaintiff's role and participation as a Class Representative, as well as for a complete release of all other claims. Courts routinely award such "incentive payments" to the persons who assume the special litigation burden of Class Representative and thereby benefit the entire Class. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action…."); *In re Dun & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

**VII.     Conclusion.**

WHEREFORE, Plaintiff Lauren Harrison respectfully requests that the Court enter the parties' agreed final approval order, which is submitted herewith for the Court to review prior to the October 15, 2012 Final Fairness Hearing as Exhibit A.

Dated: October 5, 2012           Respectfully submitted,

                                             s/ James M. Smith
                                             One of Plaintiffs' Counsel

                                             Richard J. Doherty
                                             James M. Smith
                                             BOCK & HATCH, LLC.
                                             134 N. La Salle Street, Suite 1000
                                             Chicago, IL 60602
                                             T: (312) 658-5500
                                             F: (312) 658-5555

                                             Brendan Shiller
                                             The Shiller Preyar Law Offices
                                             1100 W. Cermak Rd., Ste. B401
                                             Chicago, IL 60608
                                             T: (312) 226-4590
                                             F: (773) 346-1221